UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RBS CITIZENS, N.A., d/b/a | ) | |
| CHARTER ONE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 11 C 1820 |
| | ) | |
| SANYOU IMPORT, INC., and | ) | |
| JIAN QIANG YANG, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the motion of Plaintiff RBS Citizens, N.A. d/b/a Charter One Bank ("Charter One") to dismiss the counterclaims and strike the affirmative defenses of Defendants Sanyou Import, Inc. ("Sanyou Import") and Jian Qiang Yang ("Yang") (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the reasons stated below, the Court grants Charter One's motion to dismiss Defendants' counterclaims and grants in part and denies in part Charter One's motion to strike Defendants' affirmative defenses.

## BACKGROUND[1]

Two individuals, Gang Bai ("Bai") and Li Ma ("Ma"), own and operate Sanyou Import, a corporation which needed a loan for real estate ventures. For the loan, Bai

---

[1] For purposes of the motion to dismiss, we accept the allegations in the Defendants' answer as true. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

and Ma contacted Charter One. Although the relationship between Bai, Ma, and Yang is unclear, Yang alleges that Bai and Ma along with Stephanie Li Cheung ("Li Cheung"), a Charter One employee, and Li Cheung's supervisor personally visited Yang on two occasions, so that Yang could obtain a line of credit for Sanyou Import and personally guarantee the loan.

On March 30, 2005, Yang signed several documents as the "President" of Sanyou Import, including a Loan Agreement and a Demand Line of Credit Note (the "Note"). Yang also signed, as an individual, an Unlimited Guaranty. At the time Yang signed the documents, he was, in fact, not the President of Sanyou Import. Charter One allegedly knew that Yang was not the President of Sanyou Import and that Yang had no control over either Sanyou Import or the proceeds from the Note. Further, Charter One knew that Yang was not fluent in English and did not translate the documents into his native language, Chinese. According to the Loan Agreement, Charter One agreed to make loans to Sanyou Import in an aggregate amount of up to $100,000. According to the Note, Charter One loaned Sanyou Import $100,000 and Sanyou Import promised to re-pay Charter One. The Note is a "demand note" and gives Charter One the absolute and unconditional right to demand payment, in whole or in part, at any time. The Note also stated that Sanyou Import would not use the proceeds for personal, family, or household purposes. According to the Unlimited Guaranty, Yang unconditionally and

personally guaranteed payment to Charter One of all sums presently due or due in the future. Notwithstanding the explicit terms of the contracts, Li Cheung allegedly assured Yang that he would not assume any risks by either signing the loan documents as Sanyou Import's President or personally guaranteeing the loan.

Defendants also allege that, on March 30, 2005, Li Cheung witnessed Bai and Ma execute an agreement with Yang (the "Unidentified Agreement"), which stated that the $100,000 obtained by Sanyou Import was not meant for corporate use, but for Bai's and Ma's personal use. Pursuant to the Unidentified Agreement, Bai and Ma pledged their Chicago property as collateral for the line of credit. Even though Charter One knew of the pledge made by Bai and Ma, it subsequently lent Bai and Ma additional money in an amount equal to the remaining equity of the Chicago property.

On January 31, 2011, Charter One sent a Notice of Default, Demand for Payment, and Reservation of Rights to Sanyou Import and Yang, demanding $99,930.06 as payment for all the amounts due under the Note.

On March 16, 2011, Charter One filed suit against Sanyou Import and Yang, alleging a claim for breach of contract because the Defendants have failed to make the payments due under the Note. On April 26, 2011, Defendants filed an answer, in which Defendants asserted several affirmative defenses and Yang asserted several counterclaims.

**LEGAL STANDARD**

A motion to dismiss tests the legal sufficiency of a pleading. *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 279 (7th Cir. 1996). A court grants a motion to dismiss a counterclaim when the counter-plaintiff alleges no set of facts entitling him or her to relief. *Id.* In ruling on a motion to dismiss, a court accepts the well-pleaded allegations of the counterclaim as true, construes the allegations in the light most favorable to the counter-plaintiff, and draws all reasonable inferences in favor of the counter-plaintiff. *See Hentosh v. Herman M. Finch Univ. Of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Further, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may strike affirmative defenses which, on the face of the pleading, are insufficient as a matter of law. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

**DISCUSSION[2]**

**I.    Motion to Dismiss Defendants' Counterclaims**

Yang asserts three counterclaims. First, Yang asserts a counterclaim for fraudulent conveyance, alleging that Charter One induced Yang to sign the loan documents and accepted collateral (i.e., the remaining equity in the Chicago property)

---

[2] Both parties agree that Illinois law applies to the counterclaims and affirmative defenses.

already pledged to Yang. While Yang alleges that Charter One's actions constitute a fraudulent conveyance under Illinois common law, a fraudulent conveyance claim is governed by the Uniform Fraudulent Transfer Act ("UFTA"), 740 Ill. Comp. Stat. 160/8(a). To state a claim under the UFTA, "the factual situation must include a debtor who is liable on a claim to a creditor." *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 935 N.E.2d 963, 970 (Ill. App. Ct. 2010). The creditor seeking to avoid the conveyance must show that he or she has a right to payment from the debtor. *Id.* Defendants fail to allege facts demonstrating that Yang can avoid a conveyance because he is a creditor and has a right to payment from Charter One. Indeed, Charter One is the creditor in this case. Accordingly, this Court dismisses Defendants' fraudulent conveyance counterclaim.

Second, Yang asserts a counterclaim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2. Yang broadly alleges that Charter One violated the ICFA's requirements to Yang's detriment. To state a claim under the ICFA, Defendants must allege: (1) a deceptive act or practice by Charter One; (2) intent by Charter One that Defendants rely on the deception; (3) the occurrence of the deception during a course of conduct involving trade or commerce; and (4) that Defendants suffered actual damage proximately caused by the deception. *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 811 (Ill. App. Ct. 2007). As a matter of law,

Yang cannot state an ICFA claim based on misrepresentations that conflict with the terms revealed within the very loan documents signed. *See, e.g., Bank of Am., N.A. v. Shelbourne Dev. Group, Inc.*, 732 F. Supp. 2d 809, 826 (N.D. Ill. 2010) (dismissing ICFA counterclaim where defendants alleged that plaintiff misrepresented the terms of the contract). Accordingly, Defendants fail to state a claim under the ICFA.

Finally, Yang asserts a counterclaim for breach of a fiduciary duty. Specifically, Yang alleges that Charter One breached the fiduciary duties it owed to Yang as a bank customer. A fiduciary relationship may exist either because of the relationship of the parties or because the facts reveal that one party placed special trust and confidence in the other party which resulted in the other party's superiority and influence.[3] *Farmer City State Bank v. Guingrich*, 487 N.E.2d 758, 762-64 (Ill. App. Ct. 1985). The relationship between a bank and its customers is a debtor-creditor relationship and, as a matter of law, no fiduciary relationship exists. *Id.* at 763. Moreover, no fiduciary relationship exists between a guarantor and a creditor. *Id.* Whether viewed as a debtor and creditor or guarantor and creditor, no fiduciary relationship exists based on the relationship between Charter One and Yang. Accordingly, Defendants fail to state a counterclaim for breach of a fiduciary duty.

---

[3] Defendants allege a fiduciary duty based solely on the relationship between Charter One and Yang.

**II. Motion to Strike Defendants' Affirmative Defenses**

Charter One asks this Court to strike all of Defendants' affirmative defenses. As a preliminary matter, this Court cannot discern precisely which, or how many, affirmative defenses Defendants assert since Defendants fail to expressly label each defense.

Defendants allege that Yang lacked authority to sign the documents and bind either Sanyou Import or himself. Charter One responds that Yang had express authority to execute the loan documents. An agent has express authority to legally bind the principal when the principal explicitly grants the agent the authority to perform a particular act. *Curto v. Illini Manors, Inc.*, 940 N.E.2d 229, 233 (Ill. App. Ct. 2010). Although Yang alleges that he lacked authority to sign the loan documents and bind Sanyou Import, Defendants attached an exhibit to their answer which contradicts Yang's allegation. The contradictory exhibit trumps the allegation in the answer. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). According to the attached exhibit, on March 30, 2005, Bai, Ma and Yang entered into an agreement, originally written in Chinese, which granted Yang the authority to represent Sanyou Import as its owner and legal representative and borrow $100,000 for use by Bai and Ma.[4] Since

---

[4] Since Defendants attached the agreement as an exhibit to their answer, the agreement is deemed part of the pleading for all purposes. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Yang had express authority to execute the loan documents on behalf of Sanyou Import, Defendants' affirmative defense, based on Yang's lack of authority, is insufficient as a matter of law.

Defendants also allege that the Unlimited Guaranty is unenforceable for a lack of consideration. A guaranty, like any other contract, must be supported by consideration, but the consideration need not confer a personal benefit to the guarantor. *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 864 N.E.2d 927, 937 (Ill. App. Ct. 2007). A promise based on consideration to benefit a third person constitutes sufficient consideration to bind the guarantor. *Id.* at 937. Moreover, where the guaranty is executed at the same time as, or before, the debt is incurred, the consideration supporting the underlying debt also supports the guaranty. *Id.* Here, Defendants' answer admits that Yang executed the Unlimited Guaranty contemporaneously with the Note on March 30, 2005, and thus, no additional consideration was needed to support Yang's guaranty. Accordingly, this Court strikes the affirmative defense.

Defendants further allege that Yang was not competent to execute the loan documents, or that there was no meeting of the minds, because Yang was not fluent in English and the documents were not translated into Chinese. Yang's lack of fluency or unfamiliarity with the English language is not a defense to the enforcement of the loan

documents. *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (finding that a party who is unfamiliar with the contract language and signs the contract without learning of its contents is bound to the contract); *Velcich v. Malesh*, 1 N.E.2d 278, 280 (Ill. App. Ct. 1936) ("Illiteracy is not a defense to a contract, and, if a party to a contract cannot read an instrument, it is as much his duty to have it read to him before he signs it as it would be to read it before signing if he were able to do so."). Thus, this Court strikes the affirmative defense.

Defendants allege that Charter One's claim is barred by the doctrine of unclean hands. The doctrine of unclean hands applies if a party seeking equitable relief is guilty of misconduct, fraud, or bad faith toward the party against whom relief is sought and the misconduct is connected to the transaction at issue in the litigation. *Zahl v. Krupa*, 850 N.E.2d 304, 309-10 (Ill. App. Ct. 2006). Significantly, the doctrine only applies where the plaintiff seeks equitable relief. *Id.* Here, Charter One does not seek equitable relief, but only the legal remedy of money damages. Accordingly, this court strikes Defendants' inapplicable defense based on the doctrine of unclean hands.

Defendants finally allege that Charter's One claim is barred by its own bad faith. Neither party identified authority stating whether bad faith, apart from the doctrine of unclean hands, constitutes an affirmative defense under Illinois law. To the extent bad

faith constitutes an independent defense under Illinois law, this Court will allow Defendants' assertions concerning Charter One's bad faith to stand.

## CONCLUSION

For the foregoing reasons, this Court grants Charter One's motion to dismiss Defendants' counterclaims and grants in part and denies in part Charter One's motion to strike Defendants' affirmative defenses.

                         Charles P. Kocoras
                         United States District Judge

Dated: July 13, 2011